**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| CHICAGO TITLE LAND TRUST COMPANY, as Successor Trustee for LaSalle Bank National Association, as Trustee under Trust Agreement, dated 11/01/94, and known as Trust #119089; and STEVEN W. BECKER, THOMAS J. BECKER, and JEFFREY C. BECKER, as Beneficiaries of Chicago Title Land Trust Company, as Successor Trustee for LaSalle Bank National Association, as Trustee under Trust Agreement, dated 11/01/94, | ) | Case No. 24 CV 3409 |
| Plaintiffs, | ) | Judge Jorge L. Alonso |
| -vs- | ) | Magistrate Judge Maria Valdez |
| PARKER CONCRETE PLACEMENT, INC.; PARKER CONCRETE PUMPING INC.; BRIAN PARKER; and AUBREY PARKER, | ) | |
| Defendants. | ) | |

**PLAINTIFFS' MOTION TO COMPEL**
**DEFENDANT PARKER CONCRETE PLACEMENT, INC.**
**<u>TO RESPOND TO PRODUCTION REQUESTS</u>**

NOW COME Plaintiffs, by their undersigned attorney, and. pursuant to Federal Rule of Civil Procedure 37 and Rule 37.2 of the Local Rules of the Northern District of Illinois, hereby move to compel Defendant Parker Concrete Placement, Inc. to respond to the Plaintiffs' First Request for Production of Documents based upon the following grounds:

1. Plaintiffs' Complaint was filed on April 27, 2024. [Dkt. No. 1]

2. On July 18, 2024, Defendant Parker Concrete Placement, Inc. (hereinafter Parker

Placement) filed its Answer. [Dkt. No. 23]

3. By way of brief background, Plaintiffs' lawsuit is brought, *inter alia*, under the Resource Conservation and Recovery Act (RCRA), 42 U.S.C. § 6972(a)(1)(B), on account of the Defendants' illegal industrial operations on an agricultural site whereby a fleet of cement pump trucks was regularly washed over a period of five years, thereby generating and dumping a toxic slurry of cement wastewater, including the water-soluble carcinogen Chromium 6 (Hexavalent Chromium), directly into the soil and groundwater over an environmentally sensitive aquifer, which provides drinking water to the Plaintiffs and others local residents.
4. According to a forensic engineer/geologist consulted by the Plaintiffs, in order to conduct accurate forensic testing on the site of the illegal dumping, the Plaintiffs first need to determine appropriate "data points" based on the number of truck washings that took place, the time period over which the truck washings took place, and the principal locus of the truck washings. The longer the testing is delayed, the more difficult it will be to locate the carcinogenic chromate plume caused by the Defendants' illegal dumping activities and to eradicate it before it contaminates the local drinking water supply.
5. It is for this reason that the Plaintiffs require documentation on truck activities at the location, employees' conduct at the site, dispatch logs, etc.
6. On September 24, 2024, the Plaintiffs served Defendant Parker Placement with a First Request for Production of Documents.
7. On October 23, 2024, Defendant Parker Placement tendered its Response to Plaintiffs' First Request for Production of Documents.

8. Defendant Parker Placement refused to answer the majority of production requests and denied the existence of responsive documents for the others.
9. Instead, attached to the response were 27 pages of documents, the vast majority of which related to Defendant Brian Parker's 2017 purchase of the real property at the site, which were not relevant to the Plaintiffs' instant production requests, as the latter pertain to industrial activities occurring between 2019 and 2023.
10. Rather than responding to the production requests, Defendant Parker Placement interposed a narrative objection asserting that "[n]o business was conducted at the Brian Parker residence 7608 W. Monee-Manhattan Road, Monee, IL 60449 ("Monee site")." (Resp. to Prod. Request at 2)
11. Yet, this claim was subsequently refuted by Defendant Parker Placement's own attorney at the hearing held on November 20, 2024, before this Court on the Defendants' motion to quash subpoena when Defendant's counsel admitted, in response to a question by Magistrate Judge Valdez, that at least one employee worked at the Monee site.
12. Moreover, the Defendant's false claim that no truck activity ever occurred at the Monee site was eviscerated by a later disclosure of Declarations from Pekin Insurance concerning Defendant Parker Placement's policy coverage indicating that no less than seven (7) cement pump trucks had their "principal garaging" at the Monee site and were specifically insured at the Monee site in 2022. Furthermore, photos were previously produced to the Defendant evidencing truck washings at the Monee site within one week of the effective date of the policy, which photos are attached hereto as <u>Exhibit A</u>.

13. Therefore, Defendant's counsel can no longer be heard to object to turning over documents in response to the Plaintiffs' production requests on this spurious and thoroughly discredited ground.

14. In addition, during the pendency of the production requests, the Defendant transferred all of its assets and sold its company in a transparent attempt to shield itself from liability.

15. The Defendant's refusal to respond to valid production requests appears to have been a deliberate strategy to obstruct the Plaintiffs in order to buy time for the Defendant to secretly dispose of its assets.

16. At 11:30 a.m. on November 4, 2024, pursuant to Local Rule 37.2, Plaintiffs' counsel conducted a meet and confer by phone with Defendant Parker Placement's attorney, Alan Brinkmeier, concerning various production requests.

17. As to each of the contested requests discussed, Mr. Brinkmeier asserted that he was standing on his stated objections and that the Plaintiffs would have to bring the matter before the Court. No additional documents were produced as result of the meet and confer.[1]

18. Before addressing the contested production requests, it is important to highlight that at least one of Defendant Parker Placement's representations that there were no responsive records was demonstrably false.

19. In Production Request No. 3, the Plaintiffs requested "All documents and electronically stored information relating to any civil or criminal action to which

[1] The Defendant subsequently produced an insurance policy, but this was not one of the production requests regarding which the Defendant objected.

you have been a party."

20. Defendant Parker Placement responded, "None." (Resp. to Prod. Request at 5)

21. Yet, Plaintiffs, on their own initiative, located a very-recent civil lawsuit filed against Defendant Parker Placement in this very court in 2023 in the case of *Midwest Operating Engineers Welfare Fund; Midwest Operating Engineers Pension Trust Fund; Operating Engineers Local 150 Apprenticeship Fund; Local 150 IUOE Vacation Savings Plan; Midwest Operating Retirement Enhancement Fund; Construction Industry Research and Service Trust Fund v. Parker Concrete Placement, Inc.*, Case No. 23-CV-3902 (N.D. Ill., E.D., filed June 21, 2023) [Dkt. 1], which is attached hereto, in pertinent part, as Exhibit B.

22. There is no legitimate excuse for the Defendant's failure to disclose this lawsuit. This lawsuit appeared on the second page of an ordinary Google Search under the Defendant's name. Whether the Defendant lied to its attorneys about the suit's existence is of no consequence. Defendant's attorneys have the obligation to exercise some degree of due diligence prior to responding to production requests.

23. This false response calls into question the truthfulness of the Defendant's remaining answers, as well as the legitimacy of its other objections.

24. In Production Request No. 4, the Plaintiffs requested, *inter alia*:

> All documents and electronically stored information relating to your business operations between January 1, 2019, and December 31, 2023, including each of the following:
>
> b. Dates of employment, including hiring and firing, for all employees, subcontractors, and any other individuals working for said business during the above time frame;
>
> c. Federal Annual Forms W-2 and 940 and State Quarterly Unemployment returns for said business;

d. Records showing amounts paid to all subcontractors, including but not limited to 1099 or 1096 forms, for said business;

e. Any State or Federal Tax returns with itemized deductions taken by said business.

25. In light of the Defendant's shifting position from its initial denial that any business activities ever occurred at the Monee site to the recent admission that at least one employee worked on the site, the Plaintiffs have every right to discover the Defendant's employees to rebut the Defendant's claim that no trucks came to the site. The Plaintiffs produced hundreds of photographs and videos to the Defendants of truck washings and activity that occurred on the Monee site. See, e.g., sample of photos included in the Complaint, which are attached hereto as <u>Exhibit C</u>. The photos illustrate different employees washing or working on trucks. The Plaintiffs have the absolute right to learn the names of the employees so that they can be deposed about their activities on the Monee site and so that the Plaintiffs may identify the specific employees working on the site in the photographs they have produced. Moreover, the Plaintiffs personally met a number of the employees who worked at the Monee site for Defendant Parker Placement; in fact, Defendant Brian Parker himself introduced several of them to the Plaintiffs. Furthermore, the photographs taken of cement pump trucks located on the Monee site (some taken by Will County investigators) reveal that trucks other than those of Defendant Parker Placement used the Monee site. Tax documents related to those subcontractors will reveal their identities, so that they may be deposed, as well.

26. In Production Request 4(f), the Plaintiffs requested "All insurance policies in

effect for said business" during the period between January 1, 2019, and December 31, 2023.

27. The Defendant did subsequently produce a policy from Acuity Insurance for the period between December 1, 2021, to July 12, 2022, as well as the aforementioned Pekin Insurance declaration, which lists Defendant Parker Placement's address as the Monee site.

28. The Defendant should be compelled to produce policies for the remaining time frames requested.

29. In Production Request 4(g), the Plaintiffs requested "All URL addresses for websites for said business" during the period between January 1, 2019, and December 31, 2023.

30. The Defendant objected to this request, *inter alia*, on the ground that "websites for company, if any, are publicly available and equally available to anyone in the public." (Resp. to Prod Request at 7)

31. All the former websites for Defendant Parker Placement, however, have been scrubbed from the Internet as part of the Defendant's recent scheme to transfer all of its assets and sell its business to another entity during the pendency of the present litigation. Accordingly, none of the website information is available any longer. Unquestionably, this information is relevant to the operations of the Defendant's business at the Monee site, images of trucks at said site, and to the Defendant's listing of its business address as being located at the Monee site.

32. In Production Request 4(h), the Plaintiffs requested "Titles, lease agreements, or purchase orders of any pump/conveyor truck equipment operated by said

business" during the period between January 1, 2019, and December 31, 2023.

33. Clearly, the Plaintiffs are entitled to this information to compare the documentary information concerning the pump and conveyor trucks in the Defendant's fleet with the photographs in the Plaintiffs' possession, as well as those photos taken by Will County officials during their investigation of the Defendant's illegal industrial activities on the agricultural property at the Monee site. The Defendant cannot, at the same time, assert that no commercial activity occurred at the Monee site and then deprive the Plaintiffs of information, which is exclusively in the Defendant's possession, about the trucks they need to refute this claim.

34. In Production Request 4(i), the Plaintiffs requested "Contracts with the Teamsters Union that were in effect" during the period between January 1, 2019, and December 31, 2023.

35. These agreements are relevant as they should outline safety protocols for workers – especially with respect to the proper disposal of toxic cement wastewater – to demonstrate whether the Defendant was in compliance with such regulations at the Monee site.

36. In a related manner, Production Request No. 6 requested:

> All documents and electronically stored information relating to the daily operations and maintenance of cement pump trucks and the proper disposal of cement wastewater including but not limited to: course certifications, cement pump truck owner manuals, employee handouts, safety instruction material, and required postings at the workplace.

37. Rather than producing the requested documents, which are undeniably relevant to the present lawsuit, the Defendant deceptively responded as follows: "No such documents exist *regarding 7608 Monee-Manhattan Road, Monee, IL 60449*

("Monee site")." (Resp. to Prod. Request at 10 (emphasis added))

38. Plaintiffs' request, however, was a general request for this material and was not limited to any particular work site. Thus, the Defendant should be compelled to produce these materials.

39. Lastly, Production Request No. 7 seeks "All documents and electronically stored information relating to any federal Paycheck Protection Plan applications, fund distribution, and correspondence."

40. In response to the Plaintiffs' previous third-party subpoena for this same information from the State Bank of Herscher issued after the Defendant refused to produce these documents, the Court instructed the Plaintiffs to instead issue an interrogatory to the Defendant to determine whether the Defendant used the address of the Monee site in submitting Payment Protection Plan (PPP) application(s) to the federal government.

41. The Defendant has since confirmed that it did use the address of the Monee site on such PPP application(s).

42. Accordingly, this Court should compel the Defendant to produce any PPP applications that he signed using the address of the Monee site.

43. First, this is the only federal document of which the Plaintiffs are aware during the relevant time period in which Defendant Parker Placement certified, under criminal penalties for making a false statement, that it was, in fact, operating out of the Monee site.

44. Secondly, one of the statements that the Defendant had to certify in making the PPP application(s) was that "[t]he Applicant is not engaged in any activity that is

illegal under federal, state or local law."

45. Yet, the Defendant was engaged in illegal activity at the Monee site under federal, state, and local law at the time it submitted the PPP application(s). The Defendant was violating federal law by dumping toxic waste into the soil and local groundwater in contravention of the RCRA. The Defendant was violating state law by failing to obtain the required permits for such dangerous activity. And the Defendant was violating local law by failing to obtain the proper zoning before operating an industrial business on agricultural property at the Monee site.

46. Thirdly, since the Defendant has now admitted to signing the PPP application(s), the Plaintiffs are entitled to obtain said applications to impeach the Defendant's credibility, as it made a false certification to the federal government.

WHEREFORE, for the foregoing reasons, Plaintiffs respectfully request that the Court enter an Order:

A. Granting Plaintiffs' motion to compel and ordering Defendant Parker Concrete Placement, Inc. to immediately provide all responsive documents to Plaintiffs' First Request for Production of Documents;

B. Granting Plaintiffs costs and fees incurred in relation to bringing this motion; and

C. For such further relief as this Court deems just and proper

Respectfully submitted,

/s/ Steven W. Becker
Steven W. Becker
Law Office of Steven W. Becker LLC
205 N. Michigan Ave., Suite 810
Chicago, Illinois 60601
(312) 396-4116
swbeckerlaw@gmail.com
Attorney for Plaintiffs

## CERTIFICATE OF SERVICE

I hereby certify that on January 5, 2025, I filed a copy of the foregoing **Motion** by using the CM/ECF system, which will automatically send electronic notification of such filing to all attorneys of record.

/s/ Steven W. Becker
Steven W. Becker

Law Office of Steven W. Becker LLC
205 N. Michigan Avenue, Suite 810
Chicago, Illinois 60601
(312) 396-4116
swbeckerlaw@gmail.com